The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY and BCS INSURANCE COMPANY,<br><br>Defendants. | NO. 2:21-cv-0616-BJR<br><br>**ORDER RE: (1) ASIC'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND (2) BCSI'S COUNTER MOTION FOR JUDGMENT ON THE PLEADINGS** |

## I.  INTRODUCTION

This matter comes before the Court on a Federal Rule 12(c) Motion for Partial Judgment on the Pleadings, filed by Plaintiff Atlantic Specialty Insurance Company ("ASIC"). ASIC moves for judgment on Counts V and VI of its Complaint, including a declaration that it is entitled to "equitable subrogation and contribution" against Defendants Lexington Insurance Company ("Lexington") and BCS Insurance Company ("BCSI"), and an award of $2.7 million. Mot. at 1. Both Defendants oppose ASIC's Motion. In addition, BCSI filed a Counter Motion for Judgment on the Pleadings, seeking a declaration that it is not liable for such payment. Having reviewed the parties' briefs filed in support of and opposition to the two motions, the Court finds and rules as follows.

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 1

## II.  BACKGROUND

In early 2015, Premera Blue Cross ("Premera"), not a party to this lawsuit, disclosed that in May 2014, unauthorized parties had gained access to its computer systems, installing malware that ultimately resulted in the compromise of confidential information belonging to millions of people. Compl., ¶ 19. This event gave rise to a number of lawsuits against Premera, including a nationwide class action and multiple state class actions, consolidated into a multi-district litigation ("MDL") lawsuit; and claims brought by 30 state attorneys general under the federal Health Insurance Portability and Accountability Act ("HIPAA") and the states' respective consumer protection laws (the "AG lawsuits"). In July 2019, Premera entered into consent judgments in settlement of the AG lawsuits, providing for a total payment of $10 million, including approximately $5.4 million to the State of Washington, home to the majority (an estimated 6.4 million) of those affected by the security breach. *Id*., ¶¶ 30, 31; Ex. C to Compl., *Washington v. Premera Blue Cross*, Compl., ¶ 3.2. In March 2020, Premera finalized settlement of the MDL claims, agreeing to pay $32 million into a settlement fund. Compl., ¶ 6.

Premera sought indemnification related to both lawsuits from ASIC under two ASIC policies: a primary commercial general liability policy and an umbrella liability policy. *Id*., ¶ 8. In 2015, ASIC filed a lawsuit against Premera in this Western District, seeking a declaration that ASIC was not obligated to defend or indemnify Premera in connection with claims asserted in the MDL lawsuit. *See Atlantic Specialty Insurance Company v. Premera Blue Cross*, Case No. 2:15-cv-01927-TSZ ("ASIC's first lawsuit"). In a ruling on cross motions for summary judgment, the Hon. Thomas Zilly held that ASIC had a duty to defend Premera in the MDL action, observing that at least one of the claims against Premera was "conceivably" covered, and "if one claim in

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 2

the underlying [MDL] litigation is 'conceivably' covered, ASIC must defend Premera with respect to all claims asserted in the action." ASIC's first lawsuit, July 12, 2017 Order at 6, 11. That case settled before the court had an opportunity to rule on whether ASIC had an obligation to indemnify Premera for the MDL lawsuit. Ultimately, ASIC contributed approximately $12.2 million towards the MDL settlement, and $2.7 or $2.9 million toward the AG settlement, "pursuant to a reservation of its rights to later subrogate against Lexington and BCS." Compl., ¶¶ 6, 8.[1]

Premera also sought indemnification for the AG and MDL settlements under excess errors and omissions ("E&O") insurance policies issued to Premera by Defendants Lexington and BCSI. The Lexington E&O policy was excess to an E&O policy issued by non-party Ironshore Insurance; the BCSI E&O policy was excess to the Lexington policy. Prior to settling with the state AGs, Premera exhausted coverage under the Ironshore policy, triggering its excess E&O coverage, and Lexington paid Premera $2.7 toward the $10 million AG settlement. Lexington did not, however, contribute anything toward the MDL settlement, and did not exhaust Premera's coverage limits of its E&O policy. The BCSI E&O policy, excess to the Lexington policy, was therefore not triggered at that time, and BCSI contributed nothing towards either the MDL or the AG settlement.

The instant motion is based on ASIC's claim that its two policies at issue do not provide

---

[1] In its Complaint, ASIC alleges it paid Premera $2.9 million towards the AG settlement. *See* Compl., ¶¶ 8, 67, 68, 107, 108. In its Motion for Partial Judgment, however, ASIC alleges it paid Premera $2.7 million towards that settlement. *See* Mot. at p. 1, 4. In its Reply at page 2 note 1, ASIC clarifies that the correct amount is $2.7 million, but this claim is not found in ASIC's pleadings or any documents attached thereto, and Defendants deny ASIC paid either amount. Because the Court denies ASIC's request for an award at this time, it need not make a determination as to the correct amount, but for purposes of simplicity will refer to this payment as $2.7 million.

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 3

coverage (1) for "any obligation to pay fines and penalties" or (2) for injuries arising out of "any action or omission that violates or is alleged to violate . . . Any federal, state or local statute, ordinance or regulation, . . . that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." Ex. E-1 to Compl., p.309 of 458; Ex. E-2 to Compl., p.356 of 458. ASIC argues that both exclusions apply to the AG settlements, and that Premera's liability for those settlements was therefore not covered. ASIC further argues that in contrast, both of Defendants' policies issued to Premera explicitly cover losses including "fines and penalties imposed under the Health Insurance Portability and Accountability Act or any similar local, state or federal privacy statute or regulation." Compl., ¶ 48. Lexington contributed only $2.7 million toward the AG settlement, and did not exhaust its policy limits; BCSI contributed nothing. ASIC argues it is therefore entitled to equitable subrogation of the entire $2.7 million amount against the Defendants.[2]

### III. DISCUSSION

**A.  Standard for Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings is authorized under Federal Rule of Civil Procedure 12(c), which provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of

---

[2] ASIC also argues in its motion that it is entitled to "contribution" from the two Defendants. ASIC did not assert a contribution claim in its Complaint, and for this reason alone a ruling in its favor on such claim would be improper. Even if ASIC had stated a claim for contribution, as Defendants argue, such claim does not fit the facts of the instant case. In its Reply, ASIC does not dispute Defendants' position that ASIC is not entitled to "contribution," and appears to have dropped its claim to a right of contribution.

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 4

law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation marks omitted). On such motion brought by a plaintiff, the court must accept as true the defendant's allegations and denials. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A motion for judgment on the pleadings brought by a defendant is functionally identical to one under Rule 12(b)(6), and the same standard of review "applies to motions brought under either rule." *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, whether brought under Rule 12(b)(6) or Rule 12(c), the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the non-moving party's favor, the complaint has stated "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

As with Rule 12(b)(6) motions, a court typically may not consider material beyond the pleadings in ruling on a Rule 12(c) motion. *Hal Roach Studios, Inc.*, 896 F.2d at 1555 n. 19. The court may, however, consider "material which is properly submitted as part of the complaint." *Id*. The court may also consider documents not physically attached to the complaint so long as their authenticity is not contested and the complaint relies on them. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001).

**B. ASIC's Motion for Partial Judgment on the Pleadings**

ASIC seeks a partial judgment on Counts V and VI of its Complaint, and specifically, a declaration (1) that ASIC had no duty to indemnify Premera for the amount Premera paid in settlement of the AG lawsuits; and (2) that Defendants did have such duty, which they did not fulfill. ASIC moves for an award of $2.7 million, representing the amount that ASIC claims it paid Premera in connection with the AG settlement.

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 5

**1. Whether ASIC Had Duty to Indemnify Premera for Settlement of AG Actions**

*a. Exclusion for "Fines and Penalties" Is Not Ambiguous and Excluded Coverage for Premera's Payments in Settlement of AG Actions*

ASIC argues first that although it paid Premera $2.7 million towards settlement of the AG lawsuits, both of Premera's ASIC policies contained an endorsement that provided "[t]his insurance does not apply to . . . Any obligation to pay fines and penalties." Ex. E-1 to Compl., p. 309 of 458; Ex. E-2 to Compl., p. 356 of 458. ASIC argues that using a plain-language definition of the phrase, the "fines and penalties" exclusion in its policies excluded coverage for the amount Premera paid in settlement of the AG actions.

It is an axiom of insurance law that courts must enforce clear and unambiguous policy language as written, and may not modify the policy or create ambiguity where none exists. *See Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171 (2005). Although neither the policies nor apparently the Washington Supreme Court has provided a definition of the term, the Court concludes that "fines and penalties" in this context is not ambiguous, and must be given its plain meaning. *See Wellcome v. Home Ins. Co.,* 849 P.2d 190, 192 (Mont. 1993) (answering in the negative the question, certified to Montana Supreme Court by Ninth Circuit, "whether the 'fines or statutory penalties' language is ambiguous" in insurance policy; noting that Black's Law Dictionary "defines a fine as a penalty; it defines the verb 'fine' as 'to impose a pecuniary punishment'" and that "[i]n our view, this is the commonly understood and clear meaning of the word 'fine'").

As ASIC observes, the black-letter definition of "penalty" is "[p]unishment imposed on a wrongdoer, in the form of imprisonment or fine; esp., a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 6

party's loss)," PENALTY, Black's Law Dictionary (11th ed. 2019); a "fine" is defined as "[a] pecuniary criminal punishment or civil penalty payable to the public treasury." *Animal Found. of Great Falls, Montana v. Philadelphia Indem. Ins. Co.*, No. CV 13-30-GF-DLC-JCL, 2013 WL 12141485, at *6 (D. Mont. Nov. 22, 2013) (citing Black's Law Dictionary (9th ed. 2009)); *see also Carey v. Emps. Mut. Cas. Co.*, 189 F.3d 414, 417-19 (3d Cir. 1999) (While "[t]here are not many cases dealing with the scope of a fines and penalties clause in an insurance contract . . . the available case law suggests that an exclusion for fines and penalties, where those terms are undefined in the policy, allows an insurer to deny coverage when the item to be covered is punitive, rather than merely compensatory.").

The complaint in the Washington lawsuit, attached as Exhibit C to ASIC's Complaint, contains a litany of Premera's alleged failures in violation of state and federal law. *See, e.g.*, Compl., Ex. C, ¶¶ 4, 5 ("Premera failed to review and modify security measures . . . Premera failed to conduct an accurate and thorough risk assessment . . . Premera failed to implement adequate security measures . . . Premera failed to adequately train all members of its workforce. . . . "). The Washington complaint states claims for violations of HIPAA and the Washington Consumer Protection Act ("CPA") and critically, asks "[t]hat the Court assess civil penalties" pursuant to the CPA and "statutory damages under [HIPAA] of up to $100 per violation." *Id.*, ¶¶ 6.4, 6.5. The Consent Decree in the Washington case sets the "Total Judgment Amount" at $5,432,677.04, and names the "State of Washington" as the Judgment Creditor, ordering Premera to pay the amount to the Attorney General's Office. *Id.*, at p.1, ¶ 7.1. Under these circumstances, it is clear that Premera's payment in settlement of the Washington lawsuit constituted "a sum of money exacted as punishment for [] a wrong to the state"—indeed, HIPAA "provides for no

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 7

1   private right of action." *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1080 (9th Cir. 2007).

2   ASIC asserts that "[t]he Consent Decrees from the other states contain similar language." Mot. at 4. Defendants object that ASIC has not provided the pleadings or judgments related to the 29 other AG lawsuits, but fail to deny that those lawsuits were brought by the states for violations of HIPAA and state consumer protection laws, and that the settlements also resulted in Premera's payments to the "public treasury," "exacted as punishment for [] a wrong to the state." The Court thus concludes that under the plain meaning of the term, the undisputed facts demonstrate that the payments made in settlement of the other 29 state AG lawsuits were also "fines and penalties."

Defendants do not provide authority for their position that the term "fines and penalties" may be ambiguous, or offer a competing definition of the phrase that might exclude Premera's payments to state coffers, exacted in settlement of the states' claims that Premera violated the law. Instead, Defendants argue that a provision in the Washington Consent Decree stating that the decree "does not constitute evidence or an admission regarding the existence or non-existence of any issue, fact, or violation of any law alleged by Plaintiff," is evidence that the payments were not "fines and penalties." *See* Ex. C to Compl., p. 142 of 458. Reliance on this boilerplate provision is misplaced, and supported by neither authority nor reason. Certainly, fines and penalties are routinely levied against parties that do not admit to any wrongdoing, and whether or not Premera admitted to any violation of law has no bearing on whether the amount it was ordered to pay may be considered a "fine or penalty." The Court therefore concludes, as averred in Count V of the Complaint, that "the ASIC Primary Policy and the ASIC Umbrella Policy's fines and penalties exclusion precludes coverage for any portion of the . . . AG Settlement allocated to fines

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 8

and penalties." Compl., ¶ 100.

    b. *Defendants' Claimed "Affirmative Defenses" Do Not Cast Doubt on the Conclusion that the ASIC Policies Do Not Provide Coverage for the AG Settlements*

In reaching the conclusion that the two ASIC policies at issue do not provide coverage for the AG settlements, the Court rejects several of Defendants' "affirmative defenses" arguments. First, while the allegations of the non-moving party must be accepted as true, the Court is not required to accept as true legal conclusions or formulaic recitations of the elements of a cause of action, unsupported by any allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Consistent with this principle, Lexington's assertion that "Plaintiff's claims may be barred by the doctrines of consent, accord and satisfaction, failure of consideration, estoppel, laches, release, res judicata, the statute of frauds, unclean hands, and waiver," without more, is insufficient to raise factual disputes that would preclude judgment in ASIC's favor. Lexington Opp. at 4 (quoting Lexington Ans. at 21). Contrary to Lexington's supposition, cases cited for the proposition that raising an affirmative defense will defeat a motion for judgment on the pleadings rely on factually supported affirmative defenses, not a laundry list of them. *See, e.g., Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230–31 (9th Cir. 1989) (affirmative defense to trademark claim that term is "generic" supported by allegations that raise dispute of fact). Where "affirmative defenses raise only questions of law, such affirmative defenses do not preclude judgment on the pleadings." *RLI Ins. Co. v. City of Visalia*, 297 F. Supp. 3d 1038, 1056 (E.D. Cal. 2018), *aff'd*, 770 F. App'x 377 (9th Cir. 2019) (citing *Unite Here Local 19 v. Picayune Rancheria of Chukchansi Indians*, 101 F.Supp.3d 929, 934 (E.D. Cal. 2015); *Westport Ins. Corp. v. N. California Relief*, 76 F. Supp. 3d 869, 878 (N.D. Cal. 2014) (granting plaintiff's motion on the pleadings "despite [defendant's] affirmative defenses, which fail to raise

material factual disputes").

Lexington does offer more specific arguments in support of two of these defenses: estoppel and unclean hands. Even taking Lexington's denials and factual allegations as true, however, both defenses fail as a matter of law. First, Lexington claims that ASIC's claims are barred by the doctrine of estoppel, based on Judge Zilly's ruling in the first ASIC lawsuit. However, contrary to Defendants' position, Judge Zilly's ruling that ASIC had a *duty to defend* Premera against the *MDL* claims has no direct bearing on the question of whether ASIC has a *duty to indemnify* Premera for payment of the *AG* settlements. As explicitly recognized in Judge Zilly's Order on Summary Judgment, "Under Washington law, the duty to defend is different from and broader than the duty to indemnify. Although the duty to indemnify arises only if the policy "*actually covers*" the insured's liability, the duty to defend is triggered if the policy "*conceivably covers*" the allegations in the underlying complaint." ASIC's first lawsuit, Order, p. 6 (citing, *inter alia*, *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404 (2010) (emphasis in original)). It necessarily follows that an insurer may have a duty to defend only later to learn it has no duty to indemnify. Moreover, ASIC's instant motion concerns only its duty to indemnify Premera for the AG settlement payments, a matter that was not before Judge Zilly, who was asked to consider coverage concerning only the MDL lawsuit. Whether the AG settlements were "fines and penalties" is an obviously and materially different question than whether that phrase would apply to amounts paid in settlement of private lawsuits.

Lexington argues ASIC should also be estopped from denying coverage because "ASIC approved the language of the Consent Decrees that resolved the MDL Claims and AG Claims, and, as detailed below, the Consent Decrees do not state or imply that the settlement payments

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 10

made by Premera pursuant to the Consent Decrees constitute fines or penalties." Lexington Opp. at 6. Lexington provides no authority for the proposition that ASIC is not entitled to subrogation because the consent decrees do not "state or imply" that the settlement payments were fines or penalties. Indeed, requiring this phrasing in the documents would amount to requiring Premera to admit that the ASIC policies excluded coverage, a nonsensical proposition. Thus this affirmative defense also fails as a matter of law.

Finally, Lexington posits the affirmative defense that ASIC is barred from recovery because ASIC has "unclean hands." According to Lexington, ASIC's position that Premera was fined under HIPAA constitutes a breach of ASIC's duty of good faith towards its insured. Having breached this duty, Lexington argues, ASIC is not entitled to equitable subrogation. Again, this argument too is both legally unsupported, and nonsensical; under this proposition, an insurer would never be able to enforce a coverage exclusion for fines and penalties. This affirmative defense also fails as a matter of law.

  *c. ASIC Has Adequately Pleaded, and Defendants Have Failed to Allege Facts Calling into Question, that All 30 AG Settlement Payments Constitute "Fines and Penalties"*

Finally, both Lexington and BCSI object to ASIC's motion based on the fact that ASIC attached to its pleadings only the complaint and consent decree related to the Washington action, and not documentation related to the 29 other state AG actions. In its Complaint, however, ASIC has alleged that:

> The AG Actions were based on Premera's alleged responsibility for the same data breach at issue in the MDL Action but were brought by Attorneys General of thirty states. The AG Actions alleged that Premera failed to safeguard its customers' personal, medical and financial information, resulting in the exposure of approximately 10.4 million customers' information to unauthorized parties between May 5, 2014 and March 6, 2015.

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 11

>The AG Actions also alleged that Premera inadequately safeguarded against security breaches and failed to comply with security and privacy standards of HIPAA, which permitted unauthorized access to its customers' confidential information.
>
>Pursuant to a settlement totaling $10 million between Premera and a multistate committee of representatives, the Attorneys General filed complaints and consent judgments against Premera on or around July 11, 2019. The complaints alleged violations of HIPAA and state consumer protection statutes, data safeguards, and unfair or deceptive practices of law.

Compl., ¶¶ 28-30. ASIC also alleged that "Premera settled the AG Actions for $10 million in or around July 2019." Compl., ¶ 6. In their Answers, Defendants denied these allegations only "to the extent Plaintiff's allegations and characterizations are inconsistent with or conflict with the referenced documents." Lexington Ans., ¶¶ 28-30; *see also* BCSI Ans., ¶¶ 24-26.

Defendants object to the absence in the record of documents related to the 29 non-Washington state actions, arguing that ASIC has failed to plead details related to the 29 AG lawsuits or their settlements. For example, BCSI objects that ASIC has not provided information as to "what remedies or causes of action Premera compromised in the AG settlements, much less for which AG claims and/or settlements ASIC purportedly reimbursed Premera." BCSI Opp. at 5. For purposes of determining that the AG settlement payments constituted "fines and penalties," however, it is not necessary to determine what claims were compromised. All 30 states settled their HIPAA and consumer protection claims against Premera, for a total of $10 million paid to public treasuries, allegations that Defendants have not denied.

Ultimately, Defendants fail to dispute (other than by boilerplate "documents speak for themselves" denials in their answers) any of these material allegations regarding the nature of those publicly available documents, and fail to proffer any language in the pleadings in the 29 other lawsuits that would raise an issue of material fact as to whether ASIC's policies exclude

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 12

coverage for "fines and penalties." The Court thus takes as true ASIC's undisputed allegations that the AG actions were based on the 2014-15 data breach; that the 30 AG actions claimed violations of HIPAA and the respective states' consumer protection statutes; and that Premera settled with the 30 state attorneys general for a total of $10 million, exacted as punishment and payable to the respective states' coffers. From these allegations, the Court concludes that Premera's payments in settlement of the AG actions were "fines and penalties," excluded under the two ASIC policies.

### 2. Whether Lexington and/or BCSI Had a Duty to Indemnify Premera for AG Actions

To be entitled to subrogation against Defendants, ASIC must also establish that the E&O policies issued by Lexington and BCSI *did* cover the AG settlement payments. Both E&O policies were "follow form" policies, meaning they incorporated the definitions, exclusions, and other terms contained in the underlying primary E&O policy, in this case the policy issued by Ironshore. That policy—and therefore Defendants' E&O policies—excluded coverage for "fines, penalties or taxes" except for "fines and penalties imposed under the Health Insurance Portability and Accountability Act or any similar local, state or federal privacy statute or regulation, . . . but only if such fines and penalties are insurable under applicable law most favorable to the insurability of such fines and penalties." Compl., ¶ 48; Ex. F to Compl., p. 377 of 458.

The limit of the Ironshore policy was exhausted by Ironshore's $10 million contribution towards Premera's MDL settlement. Compl., ¶¶ 7, 46. This exhaustion, ASIC argues, triggered the Lexington excess E&O coverage. Lexington, however, paid only $2.7 million towards the AG settlement, failing to exhaust the $10 million limit of that policy; and BCSI contributed nothing. Compl., ¶ 58; *see also* Ex. G to Compl., p. 411 of 458. In support of its position that the E&O

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 13

policies covered the AG settlement payments, ASIC argues that Lexington's $2.7 million contribution towards those settlements was an "admission" that the payments were covered by those policies. Lexington therefore had an obligation, ASIC argues, to cover the entire amount paid in settlement of the AG lawsuits and, if and when Lexington's policy was exhausted, BCSI had an obligation to contribute under its E&O policy as well.

The Court rejects this legally unsupported argument. The record does not reflect why or under what circumstances Lexington paid Premera the amount it did; but in any event, without more information, the Court cannot say that its payment of $2.7 million was any more an "admission" of coverage than ACIS's payment of $2.7 million to Premera was an admission.

More fatally to ASIC's request for a declaration that the settlement payments are covered by Defendants' policies, BCSI explicitly alleges facts that, taken as true and interpreted in a light most favorable to Defendants, support the conclusion that at least one of the 30 AG lawsuits imposed the kind of "fine or penalty" that is excluded under the plain language of the E&O policies.[3] Specifically, BCSI quotes the Final Judgment and Permanent Injunction entered in the California AG action, requiring Premera to pay the California Attorney General approximately $1 million "[s]pecifically pursuant to Business and Professions Code section 17206," which authorizes civil penalties for violations of one of California's consumer protection statutes. *See*

---

[3] Lexington's argument that its policy did not provide coverage of the AG settlements is cursory and insufficient, again missing the critical distinction between legal dispute and factual denial. In its opposition, Lexington states "ASIC alleges that the Lexington policy covers the AG Settlements, but Lexington denies that allegation. . . . Because ASIC's allegation that the Lexington policy covers the AG Settlement has been denied, it is assumed to be false for the purpose of ASIC's Motion." Lexington Opp. at 9-10. To quote the case that Lexington cites in support of this argument, however, only "allegations *of fact* by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1207 (E.D. Cal. 2009) (emphasis added). Lexington raises no *factual* issue in dispute of the allegations supporting ASIC's argument that the E&O policies provide coverage for the AG settlement payments.

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 14

Ex. 1 to Aff. of Marc Pearlman, ¶7.2. BCSI argues that such penalties would not be covered by the E&O policies, which exclude coverage for "fines and penalties other than those paid under [HIPAA] or similar state privacy statutes." Ex. F to Compl., p. 377 of 458. Interpreting this E&O policy exclusion and the language quoted from the California judgment in a light most favorable to Defendants, the non-moving parties, it could be said that the settlement payment was a fine paid under neither HIPAA, nor a "similar state privacy statute," but under a state consumer protection statute. ASIC has not argued that the referenced California consumer protection statute is a "state privacy statute," and fails in its reply even to address the evidence BCSI has submitted in support of its position that the California settlement is not covered by the E&O policies. BCSI has therefore raised an issue of material fact regarding whether the E&O policies provide or exclude coverage for at least one of the 30 AG settlement payments.

While Defendants have not raised any specific disputes of fact as to whether the E&O policies cover payments under the other 29 settlement agreements (again, other than with boilerplate "documents speak for themselves" denials), the issue BCSI raises as to the California settlement casts doubt on ASIC's claim that all 30 settlements constituted fines "paid under [HIPAA] or similar state privacy statutes," a proposition on which ASIC's motion depends. ASIC has not sought judgment as to some states' settlements but not others, and in the absence of all 30 settlements in evidence, the Court declines to parse out its ruling in that fashion.

Furthermore, to be clear, the Court is not ruling at this time that the E&O policies do in fact exclude coverage for the California settlement payment. Instead, given the issue BCSI has raised based on "matters outside the pleadings," the Court concludes that the declaration ASIC seeks is not one that can be granted on a Federal Rule 12 motion. As that rule provides, "[i]f, on a

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 15

motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment under Rule 56," and only after all parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d) (emphasis added). The Court will consider the matter if and when the parties bring such motion, including "all the material that is pertinent" to it.

### C. BCSI's Motion for Judgment on the Pleadings

In its opposition to ASIC's motion, BCSI included a "Counter Motion for Judgment on the Pleadings." In it, BCSI contends that ASIC has failed to allege facts supporting what BCSI claims is an essential element of ASIC's subrogation claim. Specifically, BCSI argues that such claim lies only where "a party, not a volunteer, pays another's obligation for which the subrogee has no primary liability in order to protect such subrogee's own rights and interests," and that ASIC has failed to allege facts demonstrating that ASIC was not acting as a "volunteer" when it contributed to Premera's settlement of the AG lawsuits. *See* BCSI Rep. at 2, (quoting *In re New England Fish Co.*, 749 F.2d 1277, 1282 (9th Cir. 1984) (quoting *Miller Casualty Ins. Co. v. Briggs*, 100 Wn.2d 9, 13 (1983)). BCSI argues that it is therefore entitled to judgment in its favor, dismissing that subrogation claim.

As noted, a defendant's motion for judgment on the pleadings is evaluated under essentially the same standard as a motion to dismiss, and should be granted only when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 16

for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678. In Washington, "equitable subrogation[] has traditionally been restricted in application to a party who is not acting as a 'volunteer.'" *Steamship Mut. Underwriting Ass'n Ltd. v. Osprey Underwriting Agency Ltd.*, No. C15-0043RSM, 2015 WL 10856267, at *5 (W.D. Wash. Nov. 5, 2015) (citing *Columbia Cmty. Bank v. Newman Park, LLC*, 177 Wn.2d 566, 575 (2013)). An insurer "is a volunteer and not entitled to subrogation if, in making payment, [it] has no right or interest of [its] own to protect and acts without obligation, moral or legal, and without being requested to do so by a person liable on the obligation." *Id.* (citing *Hartford Ins. Co. v. Ohio Cas. Ins. Co.*, 145 Wn.App. 765, 774 (2008)). "Whether one acts as a volunteer is determined in light of all surrounding circumstances." *Hartford Ins. Co.*, 145 Wn.App. at 774.

The Court concludes that ASIC has alleged facts that, taken as true, would reasonably support the conclusion that ASIC was not acting as a volunteer.[4] As ASIC alleged in its Complaint, Premera—the party "liable on the obligation" in terms used in *Hartford Insurance Company*—indeed requested that ASIC indemnify it; Premera "sought indemnification under [ASIC's] Commercial Policies for the AG Settlement." Compl. ¶ 8. Furthermore, ASIC made a contribution towards the AG settlement, as explicitly alleged in the Complaint, "pursuant to a reservation of ASIC's right to later subrogate against Lexington and BCS." *Id.*, ¶¶ 3, 8. ASIC did not allege, as BCSI somewhat disingenuously claims, that ASIC made the payment "only" to protect Premera's interest; ASIC alleged merely that protecting Premera's interest was *a reason*

---

[4] ASIC responds that BCSI had an obligation to raise as an affirmative defense that ASIC violated the BCSI policy's voluntary payment provision, and failed to do so in its Answer; and that BCSI has failed to allege that it suffered prejudice as a result of any voluntary payment. These arguments are largely irrelevant to BCSI's motion, which does not reference the E&O policy voluntary payment provision, but claims only that ASIC failed to adequately allege all facts necessary to make out a prima facie case under Washington's law of equitable subrogation.

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 17

ASIC made the payment. *Compare* BCSI Rep. at 5, citing Compl. ¶ 7 ("ASIC alleges . . . that it paid the MDL and AG settlements only 'in order to protect Premera's interests.'") *with* Compl., ¶ 7 ("ASIC made its contribution in order to protect Premera's interests.").

Obviously it is ASIC's position that its policies do not provide coverage for the AG settlements—that is the basis of its lawsuit—but from the allegations in the Complaint one might reasonably infer that ASIC provided coverage not as a "volunteer," but to avoid potentially breaching its duty of good faith towards its insured. *See Hartford Ins. Co.*, 145 Wash. App. at 775–76 (referencing the "insurer's obligation to act in good faith," and noting "[w]here an insurer has been paid to provide indemnity, the insurer acts prudently and in protection of its own interests by making the coverage available"). As noted, according to its Complaint, ASIC did so with the explicit intent of later subrogating against insurers it believed were liable for the payments—in other words, not as a volunteer. Because the allegations in ASIC's Complaint, taken as true and construed in a light most favorable to ASIC, demonstrate that ASIC was not acting as a volunteer, the Court denies BCSI's motion for judgment on the pleadings.

## IV.  CONCLUSION

For the foregoing reasons, the Court rules as follows:

(1) ASIC's Motion for Partial Judgment on the Pleadings is GRANTED in part and DENIED in part. The Court concludes that the ASIC policies at issue do not provide coverage for the "fines and penalties" Premera paid in settlement of the AG lawsuits. However, Defendants have submitted "matters outside the pleadings" that would contradict ASIC's blanket statement that Defendants' E&O policies do provide coverage for that payment, and the Court therefore DENIES at this stage ASIC's

request for a declaration that Defendants are liable for the $2.7 million payment.

(2) BCSI's Counter-Motion for Judgment on the Pleadings is DENIED, ASIC having alleged facts sufficient to support the conclusion that it was not acting as a volunteer in making the payments.

DATED this 7th day of February, 2022.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER RE: MOTIONS FOR
JUDGMENT ON THE PLEADINGS

- 19