The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LEXINGTON INSURANCE COMPANY and BCS INSURANCE COMPANY,<br><br>　　　　Defendants. | NO. 2:21-cv-0616-BJR<br><br>**ORDER DENYING MOTION TO COMPEL** |

## I.　INTRODUCTION

This matter comes before the Court on a Motion to Compel filed by Plaintiff, Atlantic Specialty Insurance Company ("ASIC"). ASIC seeks an order compelling Defendant BCS Insurance Company ("BCS") to produce documents that BCS has withheld on attorney-client privilege grounds. Having reviewed the parties' briefs and supporting exhibits filed in support of and opposition to the motion, the Court finds and rules as follows.

///
///

ORDER DENYING
MOTION TO COMPEL

- 1

## II. BACKGROUND

This insurance coverage dispute arose out of claims against the parties' mutual insured, nonparty Premera Blue Cross. In early 2014, Premera suffered a massive data breach, leading to the filing of a number of lawsuits against Premera and millions of dollars in damages. Premera turned to its insurance carriers for coverage. ASIC, Premera's primary general liability insurer, ultimately paid Premera the limits of that policy. ASIC made that contribution subject to a reservation of subrogation rights against Premera's other insurers, and later filed the instant lawsuit against two of Premera's secondary errors and omissions ("E&O") insurers: Defendants Lexington Insurance Company (secondary to a primary E&O policy issued by nonparty Ironshore Insurance Company), and BCS (secondary to the Lexington policy).

In this motion to compel, ASIC seeks production by BCS of documents that BCS has claimed are privileged. The documents fall into two categories, consisting generally of emails between BCS and its attorneys at the law firm of Frost Pearlman. The first is a single email thread, between and among (1) Frost Pearlman attorney Ciara Frost; (2) employees of BCS; and (3) employees of Ironshore. At the time, the Frost Pearlman firm represented both BCS and Ironshore. The second category consists of emails to and from attorney Marc Pearlman, also of Frost Pearlman, and BCS, his client. ASIC challenges the attorney-client privilege BCS has asserted over these communications. It claims as to the first category that disclosure of the communication with third party Ironshore constituted a waiver of the privilege. As to the second, ASIC argues that the emails were sent during a period in which Pearlman also represented Ironshore, and that it is unclear whether the emails were sent and received in his capacity as attorney for BCS, or for Ironshore.

ORDER DENYING
MOTION TO COMPEL

- 2

### III. DISCUSSION

*A. ASIC's Motion Is Untimely*

On February 16, 2022, BCS produced the privilege log containing the documents at issue. The discovery cutoff in this matter was March 21, 2022, yet ASIC did not seek the Court's intervention in this dispute until April 19, 2022, nearly a month after the cutoff and two months after the privilege log was produced. Further, ASIC did not file the instant Motion to Compel until May 16, 2022, more than two weeks after the Court "authorize[d] and direct[ed]" it to do so, making this motion ripe on June 21, 2022, a full *three months* after the discovery cutoff. *See* April 29, 2022 Minute Order, Dkt. No. 109.

ASIC's explanation for its serial delay does not constitute "good cause" justifying an extension of this length. ASIC claims it only discovered information indicating some of the claimed privileges might be disputable during the deposition of Ann Frolick, BCS's deputy general counsel, held on March 9, 2022.[1] ASIC does not offer an explanation for why it did not seek Court intervention at that time, still well before the cutoff. Furthermore, according to evidence produced by BCS, ASIC was in possession of all the facts necessary to challenge the disputed privilege, before the Frolick deposition. Regarding the Frost-BCS-Ironshore email, as ASIC acknowledges in its motion, "BCS's Privilege Log notes that this bates range is an email exchange between Ciara Frost, an attorney with Frost Pearlman, [employees] of BCS, and [employees] of Ironshore on January 23, 2019." If ASIC wanted to challenge BCS's assertion of attorney-client privilege based on putative waiver through disclosure to a third party, Ironshore,

---

[1] BCS also asserts, and ASIC does not dispute, that it was ASIC's decision to leave Ann Frolick's deposition until weeks before the discovery cutoff.

ORDER DENYING
MOTION TO COMPEL

- 3

the information needed to do so (*i.e.*, that Ironshore was included on the email thread) was apparently right there in the privilege log, produced in February. Yet ASIC did nothing to challenge the assertion of privilege at that time.

As BCS argues, ASIC knew that Marc Pearlman represented both Ironshore and BCS as early as 2015. The fact that ASIC did not put all of the necessary facts together to make its waiver argument until after the cutoff does not justify an extension of discovery.

ASIC argues that it is nevertheless entitled to an extension of the deadline because BCS has not articulated any prejudice it might suffer from the delay. That is not the standard. Pretrial deadlines may be flexible within reason and at the discretion of the Court. But while an extension of days or even several weeks may be supported by a showing of good cause and absence of prejudice to the other side, a delay of months in even requesting an extension appears to be little more than a lack of diligence. In the absence of a robust explanation for this disregard for court deadlines, the motion to compel is denied as untimely.

B.  *BCS's Attorney-Client Privilege Was Not Waived*

The Court might have more hesitation denying ASIC's motion to compel based on its untimeliness if the motion more obviously had merit; but it does not.

As noted, ASIC seeks two categories of documents. The first is a single email thread sent and/or received on January 19, 2019, by (1) Ciara Pearlman, a Frost Pearlman attorney; (2) employees of BCS; and (3) employees of Ironshore. ASIC argues that the inclusion of Ironshore employees on that thread constitutes a waiver of any privilege between Frost and her client, BCS. However, it is undisputed that at the time the email was sent, Frost Pearlman also represented Ironshore, on a matter of "common interest" to the two insurers: Premera's data breach claims,

ORDER DENYING
MOTION TO COMPEL

- 4

based on materially identical E&O policies.[2] Frolik Aff., ¶ 4; Pearlman Aff., ¶ 9. This communication between BCS and its attorney, therefore, remained privileged. *See Broyles v. Thurston Cnty.*, 147 Wn. App. 409, 443 (2008) (affirming trial court's ruling that privilege was not waived where "all of the people went to see [the attorneys] to get legal advice about their situation at work. They went as a group. . . . Going as a group with a common problem, statements of all are protected."). As the Third Circuit stated most clearly, "[i]f two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that ... relates to matters of common interest is privileged as against third persons."). *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 366 (3d Cir. 2007), *as amended* (Oct. 12, 2007) (citing Restatement (Third) of the Law Governing Lawyers § 75(1)). The evidence demonstrates that this is the situation here: a single law firm, representing two clients, sending a single email to both containing information regarding matters of common interest. *See* Aff. of Marc Pearlman, ¶ 11 ("At all relevant times, Ironshore's and BCS' interests with respect to the Premera Data Breach Claims have been aligned."); *see also* Frolick Aff. ¶¶ 9-10 ("At all relevant times, Ironshore's and BCS' interests with respect to the Premera Data Breach Claims have been aligned . . .. BCS and Ironshore had a common interest and working joint defense agreement with respect to the Premera Data Breach Claim."). As ASIC concedes, no written agreement is necessary to assert such arrangement, and under these circumstances (*i.e.*, the insurers' materially identical policies, and BCS and Ironshore's alignment vis a vis ASIC), the sworn testimony of both BCS's deputy counsel and BCS's attorneys that an unwritten joint defense agreement existed is sufficient,

---

[2] This situation is not as "strange" or "unusual" as ASIC repeatedly insists. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d at 362 ("It is often expedient for two or more people to consult a single attorney.").

ORDER DENYING
MOTION TO COMPEL

- 5

1  particularly where ASIC has failed to produce any evidence, other than speculation, to the
2  contrary. S*ee In re Teleglobe Commc'ns Corp.*, 493 F.3d at 363 ("The keys to deciding the scope
3  of a joint representation are the parties' intent and expectations.").

4      The second category of documents ASIC seeks is composed of emails between BCS and
5  its attorney Marc Pearlman. ASIC's position is that BCS may have waived any privilege it
6  enjoyed with its attorney, arguing that "[b]ecause Mr. Pearlman represented Ironshore when the
7  documents were generated, it is not clear whether Mr. Pearlman sent or received the materials as
8  an attorney for BCS or Ironshore." BCS has submitted Pearlman's affidavit, however, wherein he
9  unequivocally avers "[w]ith the exception of the one joint communication between Frost
10 Pearlman, BCS and Ironshore," which the Court discusses above, "all communications listed on
11 BCS' privilege log which list me as a sender or recipient were made and/or received solely in my
12 capacity as counsel for BCS." Pearlman Aff., ¶ 3. The sworn affidavits of BCS employees,
13 including its deputy general counsel, corroborate this statement. *See* Affs. of Ann Frolick, ¶ 15;
14 Charles Burke, ¶¶ 11-15. ASIC's speculation to the contrary is not sufficient to raise a question as
15 to the veracity of Pearlman's sworn testimony.

16     Finally, the Court rejects ASIC's contention that no attorney-client privilege attached to
17 any of the Pearlman communications with BCS because Pearlman was acting as a claims handler
18 for BCS, rather than as an attorney. ASIC has not produced any evidence to support this
19 speculation that would overcome the testimony of BCS's deputy general counsel that Pearlman
20 was acting as legal counsel. *See* Frolick Aff., ¶ 15.

21 ///
22 ///

ORDER DENYING
MOTION TO COMPEL

- 6

### IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Compel.

DATED this 7th day of July, 2022.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER DENYING
MOTION TO COMPEL

- 7